Good morning, Your Honor. May it please the Court, Ashfaq Chowdhury on behalf of Petitioner Appellant Mr. Rodriguez Zavala. I'd like to start by looking at the statute. As the Court is aware, the question here is trying to define what official detention means under 3585. And there are a couple places we can look. First, we can look at the BOP's own program statement. And I think the language of the program statement is important, important. Program statement reads, official detention does not include time spent in the custody of INS under the provisions of 8 U.S.C. 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in official detention pending criminal charges. Now, I think it's uncontested here that on the first day Mr. Rodriguez Zavala submitted the form I-871, which reinstitutes the order of deportation in 2006. And we've cited law including 8 CFR 241.8. That is a final order of deportation. There was nothing further to be determined in terms of deportability. Exhibit B to our previously, he entered illegally without permission. He has no fear of returning to Mexico. That's all done on the first day that he's in ICE detention, September 20th, 2014. In this regard, I think it's relevant to also look at the detainer that was filed by ICE on October 5th, just before the criminal indictment was filed in Las Vegas. And that is an exhibit to the Goulet Declaration. And that detainer notes that an order of deportation, a deportation or removal from the U.S. has been ordered. That's indicated on the form. It's been ordered. It's been ordered on the 20th, just reinstituting the former 2006 order of deportation. So in a sense, what we're asking is simply for the BOP to follow its own stated rule. Well, we know what you're asking. But this is, I think this is a bigger case that, I mean, it can seem like a little case because you just say, oh, what the heck, just give them all, give them the credit for time served. But this is, I mean, it's a systemic way that this happens. And I think, you know, I think you're minimizing the Supreme Court in Reno v. Correa. The Supreme Court stated credit for time served in official detention under 3585B is available only for those defendants who were detained in a penal or correctional facility and who were subject to BOP control. If time spent in official detention must be spent in a facility controlled by the BOP, how can time spent in an ICE custody qualify as an official detention? Thank you, Your Honor. I mean, we've got the language and then we've got the Supreme Court. And, you know, it's you know, I get it where it's, but, you know, this is a big picture thing because you have people that they're on State charges, they're on Federal charges, they're on immigration charges. But the Supreme Court seems to be pretty specific on that. And that seems to vote against you. Yes, Your Honor. Your Honor, I think Justice Rehnquist in footnote 5 in Correa actually addressed this point. In footnote 5, he says, In some cases, a defendant will be arrested, denied bail, and held in custody pursuant to State law, being turned over later to the Federal Government for prosecution. In these situations, BOP often grants credit under 3585 for time spent in State custody, even though the defendant was not subject to the control of BOP. These situations are obviously not governed by reference to 3142 release or detention orders. But because the only question before us is whether a defendant is in official detention under 3585 during the time he's released on bail pursuant to the Bail Reform Act, we need not and do not rule here on the propriety of the BOP's decision to grant credit under 3585 to a defendant who's denied bail pursuant to State law and in the custody of State authorities. Reno v. Correa limited itself in footnote 5 explicitly and said what we're dealing with here is the question of detention versus release in 3142. Justice Stevens in Reno v. Correa in the dissent had raised this point, saying that, well, you would deny credit if you're saying it's only BOP custody for those who are in State custody. Justice Rehnquist says the dissent is simply wrong when it states that we have adopted an interpretation the Bureau of Prisons itself has rejected by not allowing credit for time spent in State custody. And, Your Honor ---- He's not. Well, because of his immigration status. And then once they lodge charges against him, then he can get some credit, right? Well, Your Honor ---- You know, I get why he wants all the credit. But if you're in custody for something ---- I mean, it just would seem that when ISIS, you know, the statutory language in Correa does not seem to support your argument that that is, you know, official detention under 3585B. Your Honor, the statutory language, I would say, is very broad. And I do think, as interpreted by the BOP itself, and the government has argued for Chevron deference, applying the BOP rule, there was no pending decision on deportability, just applying the BOP rule. And on 580.28, at pages 114 to 123, the BOP goes through a lengthy discussion of when State custody time prior to Federal custody can be given credit. So the dicta that the government seizes upon in Reno v. Correa, it is dicta. The Court a number of times makes clear the only question is when someone is released under 3142 on bond, even under restrictive conditions, whether that can amount to official detention. The Court makes a rule there. But as Justice Rehnquist says in footnote 5, he carves out explicitly, says that we're not dealing with these other issues such as State custody, certainly not immigration custody. So ---- Would you concede that ICE does not have the authority to bring criminal charges against someone in ICE custody? Your Honor, they do not prosecute criminal charges. They do turn over the individuals that they identify. But just because they turn someone over, does that entitle them to a hold, a criminal hold or charges filing? That goes to the prosecutors to decide that, right? Yes, Your Honor. And in conjunction with ICE. And I would note in that regard, Your Honor, on September 20th, 2010, the first day of ICE custody, on that Form 871, those questions essentially admit to illegal reentry. And that completed form, which is then signed by the deciding officer at ICE, which is a totally complete process in terms of the deportation determination. That's complete on September 20th. From that time until the indictment, nothing is happening in ICE. Not even a date. But the thing is, ICE can't lodge charges, right? That's true, Your Honor. And they could look at ---- I mean, sometimes prosecutors don't lodge charges when they have people dead to rights. They choose not to, which I don't expect you to probably complain about at that particular point. But that, I mean, if ICE could lodge charges, your argument might be stronger, right? Well, Your Honor, I do think what's important here is this will always be looking back. This will always be the BOP. Someone has been sentenced. Someone's been prosecuted. We don't have a question of whether they're going to be prosecuted or not. That person was prosecuted, and they ended up in Federal court, ended up getting sentenced, and this is a decision made with the entire history, with the entire file that the BOP computation center has, looking back. It's not a question. I know that the district court raised the issue of we don't know whether ICE will bring charges. Charges were brought. And here, I would just say as to the second period of time, after an indictment is brought in Las Vegas and then dismissed, and then for no reason that anyone can explain, Mr. Zavala is simply shuttled into ICE custody for a period of 11 days while a complaint is being filed in Los Angeles, where the U.S. attorney had specifically said in dismissing in Las Vegas venue properly applies, appears to properly apply in Los Angeles. In that situation, a charge has been filed, the indictment has been filed, a clear indication that the U.S. attorney is going to prosecute. The U.S. attorney itself says we're going to dismiss this and venue lies in Los Angeles, and Mr. Zavala is simply shuttled into ICE custody where nothing happens. We have the case. Well, if he didn't have an immigration hold, he would have been free to be out, right? But he's got another – he has that other problem. Like, as opposed to a person that's just in custody for a particular charge, when it's dismissed, they get to go until new charges come about. But he has a separate and distinct problem. Yes, Your Honor. And what I would say here is, again, just asking in this situation that the BOP's regulation, as the government says, should be given deference. In that situation, there's no determination of deportability pending. It's all being done. There's reference to eight U.S.C. So, counsel, so this makes your case really easy on the facts, right? Because your case, we have all those signed deportation documents on September 20, and then we see the charges being brought. So on the facts of this case, you have a pretty clear-cut argument that he may have been in ICE custody, but he was really being held pending these other criminal charges. What's the broader role that you're seeking to apply in other cases where it's not so clear-cut? Well, Your Honor, I don't think we're asking for much more in this case and other cases than what BOP's program statement already says. And in terms of applying that, the BOP program statement says you don't get credit if you're pending an order of deportability and if you're being held by NS under the provisions of 8 U.S.C. 1252, pending that final deportation of deportability. It's pretty easy to apply in our case and in other cases where you have an order of deportation and it's and there's nothing more to be done. There's nothing more to be done. And I think it's important, the reference to 8 U.S.C. 1252, Your Honor. 8 U.S.C. 1252 refers to judicial review of orders of deportation. And if we look at the form here that's completed on the first day, 871, it explicitly says you have no right to any judicial review. CFR 241.8 says there's no review of this. The INA section 241A5 that's referenced says the alien is not eligible and may not apply for any relief under this chapter. That's explicitly referenced on the form and the regulation. Nothing is going to happen. And I think it's very telling when the government cites to the declaration of Mr. Goulet, it says, well, stuff was happening, and you look at the declaration, nothing was happening. Well, if he was doing a burglary when he got caught, and then it also happens that he has an unlawful reentry. So if he gets arrested, he gets an ice hole put on him, but the burglary charges aren't filed for 30 days because they have to complete an investigation and decide all of that. Then does he get all the credit? Does he get credit for time served on the burglary when he's being held for it because he's illegally here? In state custody, Your Honor? Or in ice custody? Any. But it's a different crime. It's not. He's not going to be charged with illegal reentry. He's going to be charged with, you know, he's going to be charged with like some, you know, maybe he was committing a murder. You know, I don't know. You know, that's. Well, I think it would depend on what. Because you're saying if he's here and he's going to be charged with illegal reentry at the point that ICE takes him into custody, it's a fait accompli that if he's charged with illegal reentry that you want the presumption that from the time he was put on the ice hold that he gets credit against the other, right? But is that only to this type of crime or is it to any type of crime? Well, Your Honor, I think what we're saying is if someone is in ICE custody and under the BOP zone regulation, there's no ongoing process and there can be no ongoing process in terms of determining deportability, and that person is then shuttled into Federal custody for further prosecution on illegal reentry or whatever it is that the crime is, I think just applying that rule, which is pretty simple to apply, and the BOP zone regulations incorporate looking at the ICE process and what is happening in ICE, in those situations the person should receive credit if their time in ICE custody is not for any purpose in terms of determining deportability or determining anything in terms of judicial review under 8 U.S.C. 1252. Okay. So you're saying it's a simple rule. Then the next thing is that it has to be under the statute in Caray. We would have to agree that it wasn't precluded, right? Yes, Your Honor. I think under Caray, I think footnote 5 makes it clear. I know what your argument is on that. Yes. But that's your rule, that if they get charged with illegal reentry, then it should go back to the time that the ICE took them into custody. Well, Your Honor, if we have a situation where there's no pending issue of determining deportability, and I think deportability in the case is, and I think in the briefing is a word that often we overlook. But deportability, as any dictionary will tell us, means that someone is liable to be deported. And in a situation here where you have an order of deportation, that's no longer even a question. So ---- Well, in fact, he's going to be deported after he serves his time under 1326. So you could make the argument that he was subject to deportation the entire period of time, including his Federal incarceration. Yes, Your Honor. He was ---- So that argument goes too far. Well, Your Honor ---- Not your argument. It's Gallagher's argument. I agree, Your Honor. I agree. Your Honors, unless there's any further questions, I'll reserve the remainder of my time. Well, you actually don't have extra time. You went 5 minutes over. Oh, I'm sorry. I'm just saying how to read the clock. That's the ---- Thank you, Your Honor. Thanks. Good morning. Good morning, Your Honor. May it please the Court. My name is Tricia Yu, and I represent the appellee in this matter. There are two issues in this case, but really the main issue is whether a habeas corpus petition is the appropriate mechanism for the petitioner appellant to seek credit for the time he spent in ICE custody. This is a petition where appellant is challenging the calculation of his sentence, and he's challenging BOP's calculation of that sentence. And this requires certain factual determinations that are more appropriately made at the district court level to find whether the time he spent in ICE custody was for anything more than the administrative process of processing his deportation. In this case, the appellant never raised this issue to the sentencing court. Moreover, this is a case where it's just ---- Why would he raise it to the sentencing court when it's a Bureau of Prison statute and the Bureau of Prison decision? Yes, Your Honor. What he's challenging is the ---- he's asking the BOP to look into the mines of ICE and determine what was that purpose of the two periods of when he spent in administrative custody. That type of factual inquiry often is raised to the sentencing court when defendants ask for sentencing consideration under 3583 for the time they spent in ICE custody. That is the appropriate time when that indication factually can be made. The record can be flushed out and indicated to BOP. But I guess I don't understand why you're even saying that, because ICE can't charge someone with a crime, right? Yes, Your Honor. So how could it be ICE's intention for someone to be charged with a crime if they can't charge them with a crime? Yes, Your Honor. And that is what we argued in the briefing, that ---- But you didn't make this argument that this is the wrong procedure in your brief. No, Your Honor. But we are building on the arguments and in responding to the arguments ---- I don't understand why you're taking it now. Well, Your Honor, the ---- Haven't you waived that position? Well, Your Honor, I don't believe it's waived, because in looking at the full nature ---- in the full record, particularly the magistrate judge's report and recommendation that we're asking the court to affirm, that the district judge adopted and we're indicating that perhaps where there's an indication in the record that there might be an intent to prosecute, that if ICE knew about that, that perhaps in those situations credit for the time in ICE custody would be appropriate. But in this record, that's completely lacking. And therefore, we rest on ---- we fall back to the Supreme Court's clear language in Reno that states that, you know ---- It's a completely different context. And it was talking about pretrial release versus pretrial detention. I understand that there might be some broad language that you're clinging to here in that case, but it has nothing to do with the decision in that case. Yes, Your Honor. You skipped Judge Wardlaw's prior question about why the fact that you didn't raise it below waived it, and you went back to your substantive argument. Does that mean the fact that you didn't raise it below constitutes waiver? Well, no, Your Honor, because I believe that argument is it helps set up all the arguments that the appellee made in its briefing, which is ---- It's a completely different argument, which is the ---- I mean, it hit me out of the blue. What you're saying is something along the lines of you can't bring a habeas petition when the person isn't in custody. You know, therefore, habeas isn't the right way to go. I don't know if this person is in custody or not, but they're definitely arguing that he was in custody for some period of time greater than what he should have been in custody for. Or if it's even broader, that you must raise this argument at time of sentencing, which I have a little difficulty following, but that's what you seem to be arguing, that you must therefore, they waived it. You're saying they're not raising it in the right proceeding. But what Judge Wardle has said to you is nowhere did you make that argument until you got up in a period before it. I actually kind of thought maybe I was on the wrong case when you started talking about that, and I'm thinking like, well, where did that come from? Oh, I apologize, Your Honor. I mean, I knew I was on the wrong case because I just ---- Don't apologize. But it's a ---- Don't apologize. Just say, yes, we waived the argument. We did not raise it previously. Yes, Your Honor. We did not raise it previously. Okay. Now you can go to the substance. Yes, Your Honor. And substance is ---- And Judge Wardle has a pending question on the substance, if anybody remembers. It was on how you distinguish Reno, how we might distinguish Reno. Yes, Your Honor. I think that Reno is clear that official detention is time spent in a penal or correctional facility. But again, it was in the context that there's two things pre-trial, right? You can either be detained or you can be released with or without conditions under the Bail Reform Act, right? Yes, Your Honor. And this was a release, Reno was a release with the condition of community confinement, right? Yes, Your Honor. So he was released. He wasn't considered detained. Yes, Your Honor. But in that case, to distinguish the facts, he also still was not allowed to freely leave the residential facility. In this case, yes, he was in administrative custody. No, he had the choice. He could choose to be released with the condition of community confinement or he could choose to be detained. Yes, Your Honor. He obviously requested the former. Yes. And in this case, it's true that appellant did not have ---- he was held in ICE custody due to his immigration status, which is completely separate from the decision ---- from detention pending criminal charges, because there were no criminal charges at that time. Well, even if you could make that argument as to the first ICE detention, don't you have a lot harder road to go as to the second detention after charges had been brought and the only thing that was wrong with them was the venue? Yes, Your Honor. And the second period of detention, it's important to note it was just approximately 10 or 11 days, and it was a time ---- And that's a lot of time if you're in jail. One day. Isn't there a famous Supreme Court case or something that one day is more ---- one day wrongly held is not acceptable? Yes, Your Honor, but it's not an unreasonable amount of time given the procedures that need to happen for the determination by the ---- second indictment. And it's a 1326, which the government does all the time as a matter of routine. Yes, Your Honor. And it was only 10 days, and in that amount of time, I believe this is outside the record, but the ICE agent in the Central District of California, the second district where the case was charged, would need to review the immigration file, would need to prepare that, submit it to the United States Attorney's Office, and then there the prosecutors would need to review it, ensure that ---- compare the photographs, ensure that the documentation was in order to bring charges. The charges here were brought relatively quickly. It was 10 days, and that included two weekends. It was shortly before the holidays. The government was certainly acting. There's nothing to indicate that. They were just holding him. The worst argument you've made besides the one you waived. And that's a terrible argument, that this time is somehow reasonable. I mean, you have stronger arguments, don't you? Well, yes, Your Honor, and I think that it's clear that according to the BOP program statement, that official detention does not include time spent in ICE custody. And the cases that Appellant relies on indicate that there should be ---- So what regulation says it doesn't include time spent in ICE custody? Yes, Your Honor, the program statement that Appellant also cited, too, that indicates that time spent ---- Pending a final determination of deportability. Yes, Your Honor. And what he's arguing is that the final determination of deportability was made on September 20th. Yes. And therefore, he wasn't being held pursuant to that provision. Well, Your Honor, but he was being held to allow sufficient time for ICE to process his deportation. The cases that Appellant relies on ---- Well, first place, it doesn't say that. It says pending the final determination of deportability. That was made. Now, if you want to interpret it as including more time, that, I suppose, would be a factual question. Is that why you were holding him? Or were you holding him because there was a determination being made by the U.S. attorney as to whether to prosecute him? Your Honor, I agree that the record is clear that the final determination had been made at that point. However, there's a certain amount of time that ICE needs to process the deportation. So there's a question that arises as to why you were holding him, because he was prosecuted and so that we know now that he ---- one of the reasons he might have been being held is because there was going to be a criminal prosecution. Another reason could be, what you say, that it was taking time. All that was happening at this time was that ICE was trying to figure out whether they really wanted him to deport him after having gotten the order of deportation. Your Honor, what I think we have from the record was there was the order of deportation and ICE was processing that. The cases that the appellant relies on when ---- All right. I haven't finished my question. Yes, Your Honor. I apologize. All right. So let's assume at the best for you that there were two things going on then. One, the government was deciding whether they wanted to prosecute him. And two, you were going through this elaborate process of making sure you really could deport him. That's a factual question. It's not covered by the regulation, which is you can hold him up until the time you get the final order. So if there has been a criminal prosecution, there's certainly a reasonable possibility that you were holding him for that. And that's made somewhat clear by the second time you held him, between indictments and jurisdictions. That couldn't have been because you were trying to spend all this time deciding whether you really wanted to deport him. This was after that. So there must be some way of determining the facts. Why were you holding him? It would seem to be reasonable if shortly after you held him up until the government decided they were going to try him, that there might be a presumption that that was why you held him. Or you might argue for a presumption the other way. But that would be one thing for a court to consider, should there be a rebuttable presumption, that you were holding him because you were told the U.S. attorney was interested in prosecuting him, or that somebody figured that out. What was the reason you were holding him the second time? Your Honor, that would answer the court's question about, should there be a rebuttable presumption, and then I will try to explain what the record says about why he was being held. Regarding the rebuttable presumption, there should not be a rebuttable presumption that just because there's a final order of deportability that Andy is then shortly thereafter prosecuted. Yes, Your Honor. And even the cases Appellant relies on, in those cases, for example, Guante and Galán Paredes, there was a – in those records, there was an indication that the deportation was stopped or canceled. So there was a clear indication there that he was being held for criminal prosecution. In this case, there was nothing to indicate that the wheels processing the deportation had stopped in any way. So there shouldn't be a presumption that just because there is a final order. And that's the question raised by the district court. Yes, Your Honor. And as to factually, in this case, the record simply does not have anything that indicates that the only reason he was being held was for criminal prosecution. And that, at this point, is not – because the facts are not there, it's not appropriate to place on BOP's sentencing calculation. Well, the fact that the inference is there. There are no facts other than that he was being held and that he was then prosecuted. Yes, Your Honor, but there's – absent that filing of criminal charges, that he was not being held because of the pending criminal charges, and absent more facts in the record that are lacking here, those 10 days should be considered administrative and he should not get credit for that. If I understand your strongest argument, that – your strongest argument would be that 3583 includes the definition of official detention, that Reno v. Corre further says what that means, and then you have the BOP program statement, which you would argue is entitled to some sort of deference, and based on those, the court shouldn't put a presumption in to tell you how to do your job. That those statutes that – that Supreme Court case and your program statement tell you how to calculate it, and that's that. Yes, Your Honor. All right. Now, you've explained the first period of detention. What about the second period after the U.S. attorney dismisses it because it's brought in the wrong venue? Yes, Your Honor. It's a very – it's a similar process for the different districts. The different districts may have different standards for when they choose to file or seek criminal charges against the defendant. Yeah. But we don't care about why they did that. I mean, what were you doing during that period toward the deportation process? Well, Your Honor, what ICE was doing is going through – again, it was only 10 days. It's not unreasonable. No. You'd already gone through 10 days the first time. Yes, Your – yes, Your Honor. And when the charges were dismissed in the District of Nevada, the process again begins to – You started all over again figuring out if you really wanted to deport him. Yes, Your Honor. It's a matter of ensuring that the evidence is there before criminal charges are brought, and the appellee respectfully submits that 10 days was not unreasonable to do that. So could ICE have just deported him during those 10 days? According to this record, there was nothing to indicate that they couldn't have. And they could have, and then perhaps criminal charges might not have been filed in the second district. So where was he actually being held? What facility? Your Honor, I – the record is not clear on that point. I know that he was transferred within 10 days from Nevada to California. No, he was transferred from ICE custody to VOP custody, but he could actually be in a state prison or like the MDC, right? And then we just say it's, you know, just documents being filed, right? So he could actually be – have been held in a state facility, right? Yes, Your Honor, but again, that's a factual determination, and those facts are lacking in this record. So to put on – I'm not sure they're lacking. I'm just wondering what your understanding of it is. I'm unfamiliar with how in Nevada ICE, where they house the people being held. How about in Riverside? Your Honor, he was held at MDC when the charges were filed. So I – Was he moved anywhere after the first charges were filed? Was he – I'm asking, has he physically moved from a location? I mean, is he in a state prison? Or are just documents filed saying now I'm in ICE custody, now you're being held pursuant to U.S. Marshals? Your Honor, I think the record doesn't have those facts in it. So again, that's why – My understanding from what I've read is that oftentimes they're held in a state facility or the MDC, and it's just a document that's filed. They're not physically transferred anywhere. Are you familiar with that? Yes, Your Honor. Okay. But I think the – my point is that having BOP try to figure that out based on information that's not in the record before them, it's not the appropriate way to handle the appellant's interest in trying to get credit for the time, that he should raise it. BOP has to do that without it being raised. It's sentencing, and that's your argument that you weighed, for periods of state custody, right? Yes, Your Honor. And in those cases, it's clear that if an inmate – if an inmate is in state custody and the point at which they enter into marshal custodies on the Federal charges, that the burden is on them to show when the – when they should be getting credit for that time. And the sentencing court takes that into consideration in determining the credit that they previously should get. Thank you, counsel. Thank you. Thank you, counsel. Case disargued will be submitted.
judges: REINHARDT, WARDLAW, CALLAHAN